Nott, J.,
concurring:
I dissent from the preliminary ruling of the court, which admits in evidence against the objection of the claimant certain subsequent charter-parties in no way connected with the subject-matter of this action. They are, in my judgment, wholly irrelevant and immaterial, and should not enter into the consideration of the case. ■
As to the steamer liebecca Clyde, I place my concurrence in the judgment of the court, exclusively, on one very simple fact. The claimant was notified that the rate must be reduced or the vessel would be discharged; and he said, in writing: “ If the ■ government will keep her for four months, * * * I will reduce her to $200 per day.” He did not ask for a formal agreement nor demand a reply. His offer was coupled with a voluntary continuance of the vessel in the service, and was made conditional only upon the length of her service. If the defendants had retained her for four months the imposed condition would have been complied with fully. But the claimant prevented compliance by voluntarily taking the vessel out of the service before the four months elapsed. He thereby waived the condition.
This construction of his offer the claimant has himself' affirmed. The reason assigned by his agent for seeking the vessel’s discharge was not the failure of the defendants to accept his offer, but the “ lowness of the charter-party, and on aceount of the toorms in that department at that season.” As the defendants had then named no rate of reduction, this “ lowness of th&-charter-party” must refer to the claimant’s own jmoposed reduc- *154 ction, and he must have understood that the vessel was then in ■service at that rate. The defendants must have understood ffhe same, for they paid (and the claimant accepted it) at that rate. Thus all the contemporary acts of the parties lead to the •same construction. The defendants complied with the agreement as construed by both parties, and have even overpaid the -claimant. He proposed that the reduction to $200 a da,y should take effect on the 20th December, 1863, while they continued ■the old rate of $300 up to the 2d January, 1864.
As to the Emilie, I place my concurrence exclusively upon ■these facts. The defendants, on the 22d April, 1863, notified the master that the charter rate must be reduced to $175, a day to take effect from the 9th April then past, or that the vessel would “ be discharged the service.” The master thereupon offered to reduce the rate to $300 a day, to take effect on the 5th May ensuing,upon the condition that she should be retained for four months in the sendee. This offer, after being transmitted to the -Quartermaster General at Washington, was declined June22d, by the defendants, and the vessel’s discharge was demanded by the master, June 23d, but the vessel was detained by military authority till the 13th July.
So far, I should say that the owner ought to be paid at the •■original rate of $350 a day up to the time of receiving notice •of the proposed reduction to $175, that is to the 22d April. During the pendency of the master’s offer, he took the risk of the ■defendants’ declining it and cannot hold them to a higher rate than they had named to him. They did decline it, and hence, for that intermediate period, the owner should receive only what they proposed to give, $175 a day. During the time the vessel was detained by military authority the original charter-party rate revived, and the owner should be paid $350 a day from the 23d June till the final discharge of the vessel at Philadelphia.
But it appears that instead of following the vessel through these legal fluctuations of her rate, the defendants paid $350 a •day, not till the 9th April, at which time they proposed this reduction should take effect, nor to the 22d April, when they •gave notice of their intended reduction, but up to the 5th May, when the owner proposed that his reduction should begin; and that from the 5th May they paid not at the rate named by themselves, $175 a day, but at the rate named by the master, $300 day. It also appears that they paid this with the expressed *155 understanding that no other charge was to be brought by the owner, and that the claimant accepted and receipted for it in full, making no claim for any other remuneration. It was the parties’ own way of settling an involved account. Such a transaction is a final settlement which no court should allow them to disturb.